SCHEB, JOHN M., Senior Judge.
D.V., a juvenile, appeals from the trial court’s order holding him in direct criminal contempt of court. We reverse.
The State filed a petition in circuit court alleging that D.V. was a delinquent child based on his commission of criminal mischief, a first-degree misdemeanor. D.V. pleaded not guilty and the case proceeded to trial. After hearing the State’s three witnesses, followed by D.V. and two other defense witnesses, the court found D.V. *1099 guilty of the lesser offense of second-degree misdemeanor criminal mischief.
Immediately after finding D.V. guilty, the court stated, “[y]ou have come in here and given false testimony as to what happened in this incident, and you’re going to be sentenced for it.” The court informed D.V. of the court’s accusation of perjury and inquired if he could show any cause why he should not be found in contempt. Fla. R. Juv. P. 8.150. Hearing no cause, on September 17, 2001, the court entered a detailed order finding D.V. in direct criminal contempt of court for having committed perjury.[1] Several weeks later, while D.V. was before the court on other charges, the court sentenced him to time served on the contempt charge. This appeal challenging D.V.’s contempt conviction ensued.
A court has the power to punish perjury by direct criminal contempt, provided (1) the alleged false answers had an obstructive effect, (2) there existed judicial knowledge of the falsity of the testimony, and (3) the question was pertinent to the issue. State ex rel. Luban v. Coleman, 138 Fla. 555, 189 So. 713, 714 (1939). See also State ex rel Laramie v. Boggs, 151 So.2d 456, 459 (Fla. 2d DCA 1963). At issue here is (2) — whether judicial knowledge of D V.’s false testimony existed.
The trial court correctly pointed out that D.V.’s testimony was in conflict with the testimony of the State’s witnesses in several respects, a fact amply revealed by the record. Two eyewitnesses for the prosecution testified that during an altercation that occurred when the victim parked his car at a service station, D.V. slammed a skateboard into the victim’s vehicle. Officer Blenker of the North Port Police Department interviewed D.V. shortly after the incident. She stated that D.V. denied striking the victim’s vehicle with his skateboard. However, she observed the damage to the victim’s car and said it was consistent with the testimony of the State’s witnesses. D.V., M.L., and John Rhoades testified concerning the altercation that occurred. Each stated that D.V. never struck the victim’s car with his skateboard.
The trial court found that the testimony of the State’s witnesses raised no reasonable doubt as to their truth; that conversely there was no reasonable doubt as to the falsity of the testimony by D.V. and the defense witnesses. The court concluded that D.V. and the defense witnesses had committed perjury and, as noted, found D.V. in direct criminal contempt.
In a very thoughtful opinion the trial court explained the difficulties encountered in juvenile court proceedings where false testimony is presented to the court. The court pointed out that the strained resources of the State Attorney’s Office make it unlikely that many such cases will be prosecuted. We recognize the problems alluded to by the trial court. In Manning v. State, 234 So.2d 16 (Fla. 2d DCA 1970), we held that perjured statements made in the presence of the trial court would support a conviction for direct criminal contempt. Nevertheless, the court’s finding the testimony of a witness to be in conflict with that of one or more witnesses does not satisfy that requirement of judicial knowledge that a witness has committed perjury.
In Emanuel v. State, 601 So.2d 1273 (Fla. 4th DCA 1992), the Fourth District applied the rule in Coleman that courts should not weigh conflicting testimony to establish judicial knowledge of the falsity *1100 of testimony. Rather, Judge (now Justice) Anstead pointed out that courts must apply a strict standard of proof to establish judicial knowledge of the falsity of the testimony and leave the alleged contemner to be punished criminally if guilty of perjury. We agree with Judge Anstead’s comment that “[pjerjury poisons the well from which justice flows. That is why, in the appropriate case, a prosecution for perjury should be brought to insure that judicial proceedings are not undermined by those who would intentionally give false testimony.” Emanuel, 601 So.2d at 1276.
We reverse D.V.’s conviction for direct criminal contempt.
ALTENBERND and STRINGER, JJ„ Concur.

. The trial court also held in contempt two witnesses who testified on behalf of D.V. This court recently reversed both of those convictions. M.L. v. State, 819 So.2d 240 (Fla. 2d DCA 2002); Rhoads v. State, 817 So.2d 1089 (Fla. 2d DCA 2002).